UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
GEORGITSI REALTY, LLC,

                              Plaintiff,                   REPORT AND
                                                                                                                    RECOMMENDATION
         -against-
                                                                                                    08 CV 4462 (DLI)(RML)

PENN STAR INSURANCE COMPANY,

                              Defendant.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Defendant Penn Star Insurance Company ("defendant" or "Penn Star") moves for summary judgment against plaintiff Georgitsi Realty, LLC ("plaintiff" or "Georgitsi"). By order dated June 2, 2011, the Honorable Dora Irizarry, United States District Judge, referred defendant's motion to me for a report and recommendation. I held oral argument on July 29, 2011 and have carefully considered both parties' submissions. For the reasons stated below, I respectfully recommend that the motion be granted.

### BACKGROUND AND FACTS

        Plaintiff commenced this diversity action in New York State Supreme Court, Kings County, on September 26, 2008. On December 5, 2008, defendant removed the case to this court. The action seeks indemnification and reimbursement for losses and damages sustained to plaintiff's property. The basic facts, as alleged by plaintiff, are as follows:

        Plaintiff is the owner of a building located at 1502 8th Ave., Brooklyn, New York (the "Building"). (Complaint, dated Sept. 26, 2008 ("Compl."), ¶ 5.) On October 28, 2007, defendant issued a named-peril insurance policy, numbered PAC6693219 ("the Policy"),[1] to

---

[1] The Policy is attached as Exhibit A to the Affidavit of Robert Massaro, Esq., sworn to
                                                                                                       (continued...)

plaintiff to insure the Building for the period of July 9, 2007 through July 9, 2008. (Id. ¶ 8.) The Policy provided commercial property coverage for losses caused by fourteen named perils: fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; sinkhole collapse; volcanic action; falling objects; weight of snow, ice, or sleet; and water damage. (See Affidavit of Robert Massaro, Esq., sworn to Sept. 1, 2010 ("Massaro Aff."), ¶ 6 & Ex. A.)

Beginning in 2007, the Building sustained extensive property damage as a result of poorly-conducted construction and excavation work on the property adjacent to it. (See Compl. ¶ 6.) The excavation continued even after notification was given to the excavator, the adjacent owner, the owner's engineers and architect, and the New York City Department of Buildings (the "DOB"). (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, dated Sept. 20, 2010 ("Pl.'s Mem."), at 3.) The DOB subsequently issued multiple "Stop Work" orders and summonses to the adjacent owner and the excavator. Id. According to plaintiff, the owner and excavator both pleaded guilty to these summonses and they received $36,500 in fines. (Transcript of Oral Argument, dated July 29, 2011 ("Tr."), at 30.)

On December 20, 2007, plaintiff notified defendant of its claim under the Policy for damages that the work on the adjacent property caused the Building.[2] (Compl. ¶ 11.) Plaintiff requested indemnification and reimbursement pursuant to the provisions of the Policy. (Id.)

---

[1](...continued)
September 1, 2010.

[2] In 2007, plaintiff also commenced an action in the Kings County Supreme Court against the adjacent property owner. (Pl.'s Mem. at 3.) According to plaintiff, although that action has resulted in a temporary restraining order to stop work on the adjacent property, the action itself "has been mired in multiple delays." (Id.; see also Tr. at 18.)

Defendant has refused to indemnify and reimburse plaintiff for these damages; it claims that there is no coverage under the Policy for the damages because they were not caused by any of the fourteen perils enumerated in it. (Id. ¶¶ 12, 13.)

Defendant presently moves for summary judgment on the ground that the Policy does not cover the damage to the Building. (Defendant's Memorandum of Law in Support of Summary Judgement, dated Dec. 22, 2010 ("Def.'s Mem."), at 1.) In addition, defendant asserts that both the Policy's earth movement exclusion and late notice provision vitiate any possible coverage.[3] (Id.) Plaintiff counters that it is entitled to reimbursement and indemnification because the losses and damage to the Building were caused by vandalism and/or sinkhole collapse, both of which the Policy covers. It also contends that it provided timely notice to defendant and that the earth movement exclusion is not applicable.

## DISCUSSION

A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and decide only whether there is any genuine issue to be tried. Eastman Mach. Co. v. United States, 841 F.2d 469, 473 (2d Cir. 1988). A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, there is sufficient evidence favoring the non-movant such that a reasonable jury

---

[3] The Policy contains an exclusion for damages resulting from "Earth Movement." (See Massaro Aff., ¶ 12 & Ex. A.) In addition, the Policy contains a standard late notice provision, which, inter alia, requires the insured to give "prompt notice of the loss or damage." (See id. ¶ 18 & Ex. A.)

could return a verdict in that party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing that no genuine factual dispute exists rests on the party seeking summary judgment. Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994) (citation omitted). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). It is well-settled that "[o]n a motion for summary judgment, the court is not to weigh the evidence, or assess the credibility of the witnesses, or resolve issues of fact, but only to determine whether there are issues to be tried." United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) (citations omitted).

In this case, defendant argues that it is entitled to summary judgment because there are no questions of fact and the Policy does not cover the construction and excavation work that both parties agree was the cause of the damage to the Building. (Def.'s Mem. at 1.) Defendant also contends that summary judgment is appropriate because the Policy's earth movement and late notice provisions both bar plaintiff's claim for coverage. (Id.) On the other hand, plaintiff claims that the construction and excavation work falls into two categories of perils that the Policy covers: vandalism and sinkhole collapse. In addition, it asserts that it gave defendant timely notice of its claim.

"New York insurance law provides that an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006) (citations and internal punctuation omitted). "The initial interpretation of a contract is a matter of law for the court to decide." Morgan Stanley Group Inc. v. New England Ins. Co, 225 F.3d 270,

275 (2d Cir. 2000) (citation and internal punctuation omitted).  In addition, "[i]t is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss."  Id. at 276 (citations omitted).  "In order to obtain coverage under a first-party [insurance] policy, the insured must suffer a loss caused by a covered peril (in a named perils policy) . . . ."  Parks Real Estate Purchasing Group, 472 F.3d at 48 (citations omitted).  Plaintiff claims that its damages were the proximate result of either vandalism or a sinkhole collapse, each of which is a named peril under the Policy.  I will discuss each in turn.

> B. Vandalism

The Policy insures the Building against losses caused by vandalism, which it defines as "willful and malicious damage to, or destruction of, the described property."  (Massaro Aff., Ex. A.)  Plaintiff argues that the damage to the Building was the result of vandalism, since the adjacent property owner's conduct "can only be described as intentional and malicious."  (Pl.'s Mem. at 14.)  Plaintiff has failed to produce any direct evidence of willful or malicious intent on the part of the adjacent property owner or its contractors.[4]  Instead, plaintiff's basic contention is that in improperly excavating and shoring the adjacent property, the adjacent property owner and excavator acted so recklessly and with such disregard for the safety of others and neighboring property that their actions can be classified as willful and malicious.  (See Pl.'s Mem. at 11–15; Tr. at 10–15, 17–21.)  However, plaintiff's attempt to categorize the construction and excavation work on the adjacent property as vandalism is misguided.

---

[4] At oral argument, plaintiff requested that I stay this action or reserve decision on this motion to allow for further discovery in its state court action against the adjacent owner.  (See Tr. at 30–31.)  However, after numerous extensions, the discovery period in this action expired more than a year ago, on June 1, 2010.  (See Minute Entry, dated Mar. 2, 2010.)  Therefore, there is no reason to delay resolution of this matter.

First, plaintiff itself concedes that it does not yet have proof that the adjacent property owner and excavator acted recklessly.[5] (See Tr. at 18; Pl.'s Mem. at 11.) More important, even assuming that the adjacent property owner and his excavator acted in a reckless manner, malicious and willful intent toward the Building cannot be inferred from their actions. Plaintiff bases his argument for coverage on the proposition that malice can be inferred from recklessness or the intent to engage in activities that could reasonably cause harm. (See Letter from Jack Dweck to M.J. Levy, dated Aug. 5, 2011, at 2–3 (citing Quaker City Gun Club v. St. Paul Fire & Marine Ins. Co., CIV.A. No. 84-6327, 1986 WL 3561 (E.D. Pa. 1986); King v. North River Ins. Co., 297 S.E.2d 637 (S.C. 1982)).) While the cases on which plaintiff relies both hold that proof of actual malice toward the destroyed property (or property owner) is not necessary for vandalism coverage because malice can be inferred from a wrongful act, see Quaker City Gun Club,1986 WL 3561, at *4; King, 297 S.E.2d at 638, they are not analogous to this case. They both involved situations in which the damage (and purported vandalism) occurred on the same property upon which the wrongful act was directed. See generally Quaker City Gun Club, 1986 WL 3561 (examining whether the City's razing of a gun club's premises could constitute vandalism); King, 297 S.E.2d 637 (holding that there was an issue of fact for the jury to decide whether a vandalism provision covered a roof collapse caused by persons throwing bottles onto that roof).[6]

---

[5] Plaintiff states that it <u>expects</u> discovery conducted in its suit against the adjacent property owner to demonstrate that the "excavator and the contiguous property owner acted either maliciously and/or with reckless abandon and continued to excavate in a willful and malicious fashion being oblivious to the City Regulations for safety." (Pl.'s Mem. at 11.)

[6] The same is true of the cases upon which Quaker City Gun Club itself relies. See, e.g., Louisville & Jefferson County Metro. Sewer Dist. v. Travelers Ins. Co., 753 F.2d 533 (6th Cir.
(continued...)

The Policy clearly defines vandalism as "willful and malicious damage to, or destruction of, the described property." (Massaro Aff., Ex. A.) (emphasis added). In order for coverage to apply under the Policy's vandalism clause, therefore, the vandal must have acted with deliberate intent to damage or destroy the Building. While Quaker City Gun Club and <u>King</u> would allow the court to infer that the adjacent owner and excavator had malicious intent toward the property upon which the excavation occurred, they provide no basis for doing so with respect to their intent toward the Building. Moreover, plaintiff cites no cases and this court has found none where a court has held that property damage allegedly caused by activities on an adjacent property constitutes vandalism for the purposes of an insurance policy. Instead, it is clear that the allegedly reckless activities at the premises adjacent to the Building do not constitute vandalism within the meaning of the Policy. <u>See generally</u> Franberg Realty Corp. v. Travelers Cos,, 498 N.Y.S2d 53 (2d Dep't 1986) (finding that where a policy defined vandalism as "direct loss by willful and malicious damage to or destruction of property," an adjacent property owner's failure to obtain permits and properly shore a building during construction work did not constitute vandalism within the meaning of the policy and granting summary judgment to the defendant insurance company).

C. <u>Sinkhole Collapse</u>

Plaintiff also argues that the damage caused to the Building was the result of a sinkhole collapse. The Policy insures the Building against losses caused by:

> Sinkhole Collapse, meaning loss or damage caused by the sudden sinking or collapse of land into the underground empty spaces created by the action of water on limestone or dolomite.
> This cause of loss does not include:

---

[6](...continued)
1985) (affirming coverage under a vandalism policy for damage to sewage treatment plant caused by illegal dumping of toxic waste at the plant).

> a. The cost of filling sinkholes; or
> b. Sinking or collapse of land into man-made underground cavities.

(Massaro Aff., Ex. A.)

Plaintiff has not met its burden of showing that the Policy's sinkhole provision is applicable to its losses. It has not alleged, nor is there any evidence in the record to suggest, that the sinkhole was "created by the action of water on limestone or dolomite," as required by the plain language of the Policy. In fact, at oral argument, plaintiff conceded that it had "no knowledge of what the facts [are] with regard to how they went about with the excavation." (Tr. at 29.) Moreover, as defendant has repeatedly highlighted, (see Defendant's Reply in Support of Summary Judgment, dated Dec. 22, 2010, at 3; Tr. at 36), any collapse in this case would likely be the result of land sinking or collapsing from the neighboring excavation operations. As the Policy explicitly bars recovery for "sinking or collapse of land into man-made underground cavities," allowing plaintiff to recover for damages caused by the excavation work would be contrary to the terms of the Policy.

Plaintiff nonetheless argues that under title 28,[7] § 3309.4 of the New York City Administrative Code, the adjacent property owner created a sinkhole as a matter of law by digging a hole in the ground to a depth of sixty feet. (Pl.'s Mem. at 5.) However, title 28, § 3309.4 does not provide plaintiff with any support for coverage under the sinkhole provision. That section does not even relate to insurance liability or sinkholes; instead, it imposes liability on "the person who

---

[7] Plaintiff does not specifically cite title 28 (instead he references only § 3309.4 of the Administrative Code) but it is apparent that he is referring to title 28, § 3309.4, which imposes liability on "the person who causes an excavation or fill" for damage to adjacent structures.

causes an excavation or fill" for damage to adjacent structures.[8] New York City Admin. Code, tit 28, § 3309.4. In addition, the cases that plaintiff cites in support of coverage under the sinkhole provision are not relevant to insurance law or the present action. See, e.g., Podlaski v. Long Island Paneling Ctr. of Centereach, 873 N.Y.S.2d 109 (2d Dep't 2009) (personal injury action by plaintiff, who fell into sinkhole near walkway of commercial property owned by defendant).

As there are no triable issues of material fact and plaintiff cannot meet its burden of demonstrating that the damage to the building was caused by one of the Policy's named perils, I respectfully recommend that defendant's motion for summary judgment be granted.[9]

## CONCLUSION

For the reasons set forth above, I respectfully recommend that defendant's motion for summary judgment be granted. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Irizarry and to my chambers, within fourteen (14) days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
August 30, 2011

---

[8] Moreover, contrary to plaintiff's contention, a violation of New York City Administrative Code, title 28, § 3309.4 is not a basis for the imposition of absolute liability. See Yenem Corp. v. 281 Broadway Holdings, 904 N.Y.S.2d 392 (1st Dep't 2010).

[9] Because plaintiff has not met this burden, it is unnecessary to consider defendant's other arguments in favor of summary judgment (lack of timely notice and earth movement exclusion).